F I L E D
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

MAR / 2 2005

DAVID J. MALAND, CLERK
BY
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| VS. | * | CRIMINAL NO. 6:05CR29 |
| | * | |
| TYLER PIPE COMPANY, | * | |
| a Division of MCWANE, Inc., | * | |
| | * | |
| Defendant | * | |

## PLEA AGREEMENT

The parties to this agreement are the United States of America, by the United States Attorney
for the Eastern District of Texas and the Environmental Crimes Section of the Department of Justice
("United States" or "Government"), Defendant Tyler Pipe Company, a Division of McWane, Inc.
("Defendant" or "TYLER PIPE"), and the Defendant's attorneys of record.

1.  **INFORMATION:** The Defendant is named in a two - count Information filed in
the Eastern District of Texas. Count One of the Information charges a knowing and willful violation
of concealing material facts by trick, scheme and device in a matter within the jurisdiction of the
Environmental Protection Agency, Title 18 United States Code § 1001(a)(1). Count Two of the
Information alleges a knowing violation of the Clean Air Act, Title 42, United States Code, §
7413(c)(1).

2.  **GUILTY PLEA:** The Defendant understands that it has a right to trial before a jury
with respect to the charges in the Information. The Defendant further understands that the United
States must prove each and every element of Counts 1 and 2 of the Information beyond a reasonable
doubt. The Defendant understands that at any trial of Counts 1 and 2 of the Information, its attorney
would have the right to cross-examine witnesses called by the United States and would have the right

to present witnesses on behalf of the Defendant. The Defendant understands that upon entry of a guilty plea as called for by this plea agreement it will give up the rights set forth in this paragraph with respect to the charges against it.

3.    **11(c)(1)(C) STIPULATED SENTENCE:**   Knowing these rights, the Defendant agrees to waive these rights and plead guilty to Counts One and Two of the Information subject to the agreements and conditions contained herein. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the Defendant agree that the following sentence yields the appropriate sentence for this case based on the interests of Defendant, any victims of the criminal conduct, and the interests of justice:

a)    The Defendant agrees to enter a plea of guilty to Count 1 of the Information, which alleges that on or about the dates in the Information, the Defendant knowingly concealed a false material fact from the Environmental Protection Agency ("EPA"), an agency of the United States, in a matter within the jurisdiction of the EPA, and further agrees to enter a plea of guilty to Count 2 of the Information, which alleges that on or about the date in the Information Defendant TYLER PIPE knowingly violated the Clean Air Act.

b)    The Defendant agrees to pay a criminal fine in the amount of $4,500,000 (four million five hundred thousand dollars) payable at the sentencing hearing.

c)    The Defendant agrees to serve a period of five years of probation. As a condition of Defendant's probation, the Defendant expressly agrees to comply fully with the terms of the Compliance Agreement executed between Defendant and the United States EPA, Region 6, which sets forth actions required to be taken by the Defendant for improvements at the Tyler Pipe facility in Smith County, Texas. The Compliance Agreement is attached as Exhibit A, and is

2

incorporated by reference herein.

        d)      The Defendant agrees to pay a mandatory special assessment of $400 for each felony count, pursuant to 18 U.S.C. § 3013, payable at the sentencing hearing.

    4.     In the event that the Court rejects this plea agreement, the Defendant will be entitled to the remedies available under Fed. R. Crim. P. 11(c)(5).

    5.     The United States  expressly reserves the right to speak to the Court at the time of sentencing pursuant to Rule 32(a)(1) of the Federal Rules of Criminal Procedure. The United States further reserves the right to provide to the Court and to the United States Probation Office a statement of facts relating to the criminal conduct for which the Defendant was responsible; and further reserves the right to correct and comment on any misstatements of fact made by the Defendant or its attorney in the course of the presentence investigation or in the course of the sentencing or other proceedings.

    6.     **FOREBEARANCE:**  The United States agrees that if the Court accepts the guilty plea of the Defendant, that the United States will not prosecute the Defendant for any crimes occurring in the Eastern District of Texas relating to the subject matter of the investigation which were committed prior to the date of this agreement, which do not involve serious bodily injury.

    7.     The parties agree that in the event the Court concludes the Defendant violated this agreement:

        (a)    The Defendant will not be permitted to withdraw any guilty plea tendered under this agreement and agrees not to petition the Court for withdrawal of any plea;

        (b)    Any evidence or statements made by the Defendant  in connection with this agreement will be admissible at any trials or sentencing proceedings;

(c)     The United States will be free to bring any other charges it has knowledge of against the Defendant.

8.     **SCOPE OF AGREEMENT:** The Defendant understands that this Plea Agreement only applies to federal criminal charges in the Eastern District of Texas. This Plea Agreement does not provide or promise any waiver of any civil or administrative actions, sanctions, or penalties that may apply, including but not limited to: fines, penalties, claims for damages of natural resources, suspension, debarment, listing, licensing, injunctive relief, or remedial action to comply with any applicable regulatory requirement. This agreement is binding only upon the United States Attorneys Office for the Eastern District of Texas, and binding on the Department of Justice for conduct within the Eastern District of Texas. This agreement does not bind any other United States Attorney, nor the Department of Justice regarding matters outside of the Eastern District of Texas, nor does it bind any state or local jurisdiction.

9.     The Defendant understands that by signing this agreement the United States Attorney cannot bind the Internal Revenue Service from challenging deductions, assessing taxes or collecting sums of money it determines are owed by the Defendant. This agreement shall not shield the Defendant from liability for any civil or administrative actions which may be maintained against it by the Internal Revenue Service.

10.     **COOPERATION:** The Defendant agrees to provide cooperation to the Government in its ongoing investigation of possible criminal violations at the Tyler Pipe Facility. Specific conditions of that cooperation include the following:

a.     Tyler Pipe will take all reasonable steps to make its employees available to the United States to participate in judicial proceedings, and Tyler Pipe will make all

4

reasonable efforts to ensure that its officers, employees, consultants, vendors and experts cooperate with the investigation and truthfully disclose all information about their activities and those of others relating to the subject matters described in paragraphs 10(b) and 10(c). Tyler Pipe will advise its employees that: (a) they are encouraged to cooperate; cooperation can include providing information to the Government, being interviewed by Government agents or attorneys, and testifying in official proceedings; (b) Tyler Pipe will grant liberal leave if necessary to facilitate their cooperation with the Government; and (c) no employees will be fired, demoted, reassigned or otherwise suffer a reduction in pay or other benefits because of their cooperation with the United States with respect to the alleged criminal violations under investigation.

b.   Tyler Pipe  will make all documents, records and other technical information available to Government investigators which have been subpoenaed to date in this matter, that relate to or contain attorney-client communications, information previously claimed as work product or factual information associated with legal advice given at or before the time of and regarding the work performed in 1998 on the South Plant cupola and steps taken to secure appropriate environmental permits for the South Plant cupola, contemporaneous with the dates of May 26, 1997 through October 17, 2003. Tyler Pipe agrees to the waiver of privilege necessary to produce those documents which were prepared contemporaneous with documents submitted by Tyler Pipe Company to the Texas Commission of Environmental Quality (formerly Texas Natural Resource Conservation Commission) between the dates of

5

May 27, 1997 through October 17, 2003.   With regard to this time period, the Government agrees that it is not seeking documents prepared by or with counsel pursuant to Tyler Pipe Company's internal investigation concerning the criminal investigation for the Tyler Pipe Company facility in Tyler, Texas.  No waiver of privilege is intended in this paragraph of the mental impressions of counsel for Tyler Pipe.

c.       Tyler Pipe agrees to provide full access to Tyler Pipe'S consultants and copies of all factual records and reports produced by same, or factual portions thereof, including those prepared for or at the direction of counsel, that relate to or contain factual information regarding work performed in late 1998 on the South Plant cupola, located at the Tyler Pipe Company facility, as well as factual information regarding steps taken to secure appropriate environmental permits for the South Plant cupola, contemporaneous with the dates of May 26, 1997 through October 17,  2003. Access does not include paying the fees or expenses of any such consultant.  The Government will restrict any of its questioning, interviews or testimony of these individuals to factual information and documents.  With regard to this time period, the Government agrees that it is not seeking documents prepared by or with counsel pursuant to Tyler Pipe Company's internal investigation concerning the criminal investigation for the Tyler Pipe Company facility in Tyler, Texas.  No waiver of privilege is intended in this paragraph of the mental impressions of counsel for Tyler Pipe.

d.       During the period of probation, and at all reasonable times and with reasonable prior

6

notice by the Government as practicable, Tyler Pipe shall provide to government agents full access to the Tyler Pipe Company facility and employees, including access to, production and authentication of all records described in subparagraphs b. and c. herein.

e.  Tyler Pipe and all Tyler Pipe counsel agree that the United States may make  any direct or indirect use, including release as necessary to third parties, provided, however, that Tyler Pipe shall, within 60 days of the entry of this agreement in court, designate certain documents that have been produced and that will be produced as "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  The United States agrees to request of any third party that it not release any documents that Tyler Pipe has identified as confidential business information.

f.  At the time of sentencing, the United States will advise the Court of the extent of Tyler Pipe's cooperation and compliance with the terms of this plea agreement. Furthermore, the United States will advise any third parties of the nature and extent of Tyler Pipe's cooperation upon Tyler Pipe's request.

g.  As a condition of its cooperation pursuant to this plea agreement, Tyler Pipe agrees to withdraw from any and all joint defense agreements previously entered into with any party concerning the criminal investigation of the Tyler Pipe Company facility located in Tyler, Texas.

11.  **WAIVER OF APPEAL:**  Except as otherwise provided in this agreement, the Defendant expressly waives the right to appeal its sentence on all grounds, including an appeal of

7

sentencing pursuant to 18 U.S.C. § 3742. The Defendant further agrees not to contest its sentence in any post conviction proceeding, including, but not limited to a proceeding under 28 U.S.C. § 2255. The Defendant, however, reserves the right to appeal the following: (a) any punishment imposed in excess of the statutory maximum and (b) a claim of ineffective assistance of counsel that affects the validity of the waiver itself. The Defendant knowingly and voluntarily waives its right to appeal in exchange for the concessions made by the Government in this agreement.

12. **ACKNOWLEDGMENTS AND AUTHORIZATIONS:** The Defendant has had the assistance of an attorney in connection with the charges against it. The Defendant states that its attorneys have carefully reviewed this plea agreement with those persons designated by law and its bylaws to act on behalf of the Defendant ("designated employees") and that this plea agreement has been signed by a person authorized by law and the bylaws of the Defendant to execute agreements on behalf of the Defendant. The Defendant states that this plea agreement was signed only after all the questions of its designated employees concerning the plea agreement were answered by its attorneys.

13. The Defendant will provide to the United States written evidence in the form of a notarized resolution of its Board of Directors with both notary and corporate seals, certifying that Defendant is authorized to plead guilty to the felony charges as set forth in the Information, and to enter into and comply with all provisions of this Plea Agreement. The resolution shall further certify that the Chairman of the Board of Defendant TYLER PIPE and his designees are authorized to take these actions and that all corporate formalities, including, but not limited to, approval by Defendant's directors, required for such authorization have been observed.

14. The Defendant states that its designated employees have reviewed and discussed the

8

Information and the Defendant's rights in this matter with its attorneys and that its attorneys have explained the Government's evidence to those designated employees. The Defendant states that it is satisfied with the legal services provided to it by its attorneys in connection with this Plea Agreement and the matters related to it.

AGREED TO AND
RESPECTFULLY SUBMITTED,

MATTHEW D. ORWIG
UNITED STATES ATTORNEY
EASTERN DISTRICT OF TEXAS

Arnold A. Spencer
Assistant United States Attorney

Daniel W. Dooher
Senior Trial Attorney
Environmental Crimes Section, Dept. of Justice

Cheryl T. Seager
Special Assistant United States Attorney
U. S. Environmental Protection Agency (6-CID)

I have read the foregoing plea agreement and my attorneys have explained it to me and it contains everything my attorneys have explained to me about the plea TYLER PIPE wishes to enter. I have read the plea agreement and understand the terms of the agreement. I further state that there are no other prior agreements and no additional agreements, representations or

9

promises, either oral or in writing between TYLER PIPE or its attorney, and the United States, its agents, representatives, employees and attorneys. I am satisfied with the legal services provided to me in connection with this Plea Agreement and the matters related to it.

TYLER PIPE COMPANY,
a Division of MCWANE, INC.

Date: 3|14|05        BY: _____

David W. Green
Executive Vice President
McWane, Inc.

Date: 3/14/05        _____

W. Warren Hamel, Esq.
Counsel for McWane, Inc.

Date: 14M.M05        _____

F.R. Files, Jr., Esq.
Counsel for McWane, Inc.

10

**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>v.<br><br>TYLER PIPE COMPANY,<br>a division of McWANE, INC.,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>) CRIMINAL NO.<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLIANCE AGREEMENT

### I.   INTRODUCTION

The Plaintiff United States of America, on behalf of the
U.S. Environmental Protection Agency (EPA), (Plaintiff), and the
Defendant Tyle Pipe Company, a division of McWane, Inc.
(Defendant), hereby agree to the terms of this Compliance
Agreement to be implemented at the Defendant's gray iron foundry
in Tyler, Texas, which are conditions of probation pursuant to
the Plea Agreement executed between the United States and the
Defendant.

### II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.   The Defendant Tyler Pipe Company, a division of McWane,
Inc., (Defendant) is incorporated under the laws of the State of
Delaware, and authorized to do business in the State of Texas.

2.   The Defendant is a "person" as that term is defined in
Section 302(e) of the Clean Air Act (Act), 42 U.S.C. § 7602(e).

3.   The Defendant owns and operates an iron foundry located
at 11721 U.S. Highway 69 North, Tyler, Texas 75706 (Facility).

4.   The Facility is a secondary metals production facility.

5.   The Facility emits, or has the potential to emit, one
hundred tons or more of particulate matter (PM), $PM_{10}$, nitrogen

2

oxides ($NO_x$), carbon monoxide (CO), and volatile organic compounds (VOCs).

6.   The Facility is a "major emitting facility" as that term is defined in Section 169(1) of the Act, 42 U.S.C. § 7479(1), and a "major stationary source", as that term in defined in 30 T.A.C. § 116.160(a) of the Texas State Implementation Plan (SIP) (which incorporates 40 C.F.R. § 52.21(b)(1)(i)(a) by reference).

7.   The Facility is subject to the requirements of the Act.

8.   The Facility is a major source of hazardous air pollutant (HAP) emissions in that it emits or has the potential to emit considering controls, any single hazardous air pollutant (HAP) at a rate of 10 tons or more per year or any combination of HAP at a rate of 25 tons or more per year.

9.   The Facility contains an "affected facility," as defined by 40 C.F.R. § 63.7682, and subject to the National Emission Standards for Hazardous Air Pollutants for Iron and Steel Foundries, 40 C.F.R. Part 63, Subpart EEEEE.  Nothing in this Compliance Agreement shall be deemed to preclude, be deemed inconsistent with, or be deemed as an adverse admission with respect to Tyler Pipe's, or any successor's, right to assert that various  sites at the Tyler Pipe facility constitute separate facilities or separate emission sources for purposes of calculating emissions from the stationary sources or in determining the applicability of any requirements under the federal Clean Air Act, in connection with any action other than an action brought pursuant to this Compliance Agreement. Nothing in this Compliance Agreement  shall preclude the United States from asserting in any such action that various  sites at the Tyler Pipe facility constitute only one facility or emission source for purposes of calculating emissions or in determining the applicability of any requirement under the Clean Air Act.

10.   The South Plant cupola, the Impact Molding Line, the Hermann Moldmaster Unit, and the North Plant cupola are part of the Facility.

## III. BINDING EFFECT/APPLICABILITY

11.   This Compliance Agreement shall apply to and bind the Defendant, it officers, employees, agents, receivers, successors, assigns, and all other persons, including, but not

3

limited to, contractors and consultants acting under or on behalf of the Defendant in connection with the implementation of this Compliance Agreement.

12. Any transfer of ownership or operation of the Facility to any other person must be conditioned upon the transferee's agreement to undertake the obligations required by this Compliance Agreement, as provided in a written agreement between the Defendant and the proposed transferee, enforceable by the United States as third-party beneficiary of such agreement. At least thirty (30) days prior to such transfer, the Defendant shall provide a copy of this Compliance Agreement to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 6, the United States Attorney for the Eastern District of Texas, and the United States Department of Justice, in accordance with Section IX of this Compliance Agreement (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Compliance Agreement.

## IV.   COMPLIANCE PROVISIONS

### A.   South Plant Cupola

13. The Defendant shall install a capture system(s) and/or a control device(s) for the cupola which meets the emission requirements of 40 C.F.R. § 63.7690 for a cupola metal melting furnace at an existing iron and steel foundry no later than March 1, 2006. The Defendant shall submit a written certification to EPA that the provisions of this paragraph have been met within thirty (30) days of installation.

14. Except as provided in 40 C.F.R. § 63.7683(b), the Defendant shall comply with all of the requirements of 40 C.F.R. Part 63, Subpart EEEEE as they relate to the cupola upon startup of the furnace after installation of the capture system(s) and/or control device(s) referenced above, or March 1, 2006, whichever is earlier. This date shall substitute for the compliance date specified in 40 C.F.R. § 63.7683(a) for determining when the Defendant must comply with 40 C.F.R. Part 63, Subpart EEEEE. The Defendant shall submit a written notice to EPA of the startup date within thirty (30) days of the startup of the furnace.

4

## B.   Impact Molding Line

15. The Defendant shall install a capture system(s) and/or a control device(s) for the impact molding line which meets the emission requirements of 40 C.F.R. § 63.7690 for a pouring station at an existing iron and steel foundry no later than March 1, 2006. The Defendant shall submit a written certification to EPA that the provisions of this paragraph have been met within thirty (30) days of installation.

16.   Except as provided in 40 C.F.R. § 63.7683(b), the Defendant shall comply with all of the requirements of 40 C.F.R. Part 63, Subpart EEEEE as they relate to the impact molding line upon startup of the impact molding line after installation of the capture system(s) and/or control device(s) referenced above, or March 1, 2006, whichever is earlier. This date shall substitute for the compliance date specified in 40 C.F.R. § 63.7683(a) for determining when the Defendant must comply with 40 C.F.R. Part 63, Subpart EEEEE.  The Defendant shall submit a written notice to EPA of the startup date within thirty (30) days of the startup of the furnace.

## C.   Hermann Moldmaster Unit

17.   Except as provided in 40 C.F.R §63.7683(b), the defendant shall comply with all of the requirements of 40 C.F.R. Part 63, Subpart EEEEE in operating the Hermann Moldmaster Unit by no later than October 1, 2005.   This date shall also substitute for the compliance date specified in 40 C.F.R. §63.7683(a) for determining when the Defendant must comply with 40 C.F.R. Part 63, Subpart EEEEE.   The Defendant shall submit a written notice to EPA regarding the operation and compliance status of this Unit by no later than November 1, 2005.

## D.   North Plant Cupola

18.   The Defendant shall comply with the work practice standards of 40 C.F.R. § 63.7700(b) or (c) as of April 22, 2005.

19. The Defendant shall have installed a capture system(s) and/or a control device(s) for the cupola which meets the emission requirements of 40 C.F.R. § 63.7690 for a cupola metal melting furnace at an existing iron and steel foundry.   The Defendant shall submit a written certification to EPA that the provisions of this paragraph have been met within thirty (30)

5

days after the effective date of the Plea Agreement.

20.   The Defendant shall comply with all of the
requirements of 40 C.F.R. Part 63, Subpart EEEEE as they relate
to the cupola within 180 days after the effective date of the
plea agreement.   The date 180 days after the effective date of
the Plea Agreement shall substitute for the compliance date
specified in 40 C.F.R. § 63.7683(a) for determining when the
Defendant must comply with 40 C.F.R. Part 63, Subpart EEEEE.
However, by said date, the Defendant shall have complied with
all requirements of 40 C.F.R. Part 63, Subpart EEEEE as they
relate to the cupola, that must normally be completed within 180
days of the compliance date, up to and including any requirement
for an initial performance test.

## E.   Miscellaneous

21.   If construction or reconstruction of an affected
source, as defined by 40 C.F.R. § 63.7682 occurs, the Defendant
shall comply with the requirements for new affected sources at
the Tyler Pipe Company facility.

22.   If a significant net emissions increase of any
regulated new source review (NSR) pollutant will result from the
removal or modification of any pollution control equipment for
the sources identified in Section IV.A, B, and D above, the
Defendant shall obtain a prevention of significant deterioration
(PSD) permit from the Texas Commission on Environmental Quality
(TCEQ) prior to the removal or modification of the pollution
control equipment.

## V.   PERMITTING

23.   Where any obligation under this Compliance Agreement
requires the Defendant to obtain a Federal, State, or local
permit or approval, the Defendant shall submit timely and
administratively complete applications and take all other
actions necessary to obtain all such permits or approvals.

24.   Within sixty (60) days after the effective date of
this Compliance Agreement, the Defendant shall submit a permit
modification application(s) to the TCEQ to incorporate the
provisions of Section IV of this Compliance Agreement into the
appropriate federally enforceable State permit(s) (other than
any Title V permits). Nothing in this Compliance Agreement shall

6

interpreted as constraining TCEQ's authority and discretion in reviewing any permit modification applications submitted by Defendant to TCEQ for its approval.  Following submission of the permit application(s), the Defendant shall cooperate with the TCEQ by promptly submitting to TCEQ all information that TCEQ seeks following its receipt of the permit modification application.

25.  Within sixty (60) days after the effective date of this Compliance Agreement, the Defendant shall submit a supplemental Title V Permit application to TCEQ, incorporating the provisions of Section IV of this Compliance Agreement.

26.  All submissions to TCEQ required under this Section shall also be simultaneously sent to EPA contacts listed in Paragraph 27 of this Compliance Agreement.

## VI. SUBMISSIONS

27.  All documents required under Section IV of this Compliance Agreement, including any documents required to be submitted pursuant to 40 C.F.R. Part 63, Subpart EEEEE shall be sent to the following persons:

> Chief, Air/Toxics and Inspection
>   Coordination Branch
> Compliance Assurance and Enforcement Division
> U.S. EPA - Region 6
> 1445 Ross Avenue
> Dallas, Texas 75202-2733
> Attention:  Elizabeth Cannon

> Chief, Air Permitting Section
> Multimedia Planning and Permitting Division
> U.S. EPA - Region 6
> 1445 Ross Avenue
> Dallas, Texas 75202-2733
> Attention:  Stephanie Kordzi

A copy of the submission shall also be sent to the following:

> Director, Air Permitting Division
> Texas Commission on Environmental Quality
> 12124 Park 35 Circle

7

Building C
Austin, Texas 78753

If any submission requires EPA approval, EPA may approve
the submission, or decline to approve it and provide written
comments.  Within thirty (30) days of receiving EPA's written
comments, the Defendant shall modify the submission consistent
with EPA's written comments and resubmit the document  to EPA
for final approval.  EPA will approve or modify the submission.
The document, as approved or modified by EPA, shall become the
final document.

28.  In all instances in which this Compliance Agreement
requires written submissions to EPA, each submission must be
accompanied by the following certification signed by a
"responsible official":

I certify under penalty of law that I have examined
and am familiar with the information submitted in this
document and all attachments, and that this document
and its attachments were prepared either by me
personally or under my direction or supervision in a
manner designed to ensure that qualified and
knowledgeable personnel properly gather and present
the information contained therein.  I further certify,
based on my personal knowledge or on my inquiry of
those individuals immediately responsible for
obtaining the information, that the information is
true, accurate and complete.  I am aware that there
are significant penalties for submitting false
information, including the possibility of fines and
imprisonment for knowing and willful submission of a
materially false statement.

29.  For the purpose of this certification, a "responsible
official" of the Defendant means a person as defined by 40
C.F.R. § 63.2.

## VII. FACILITY ACCESS AND RECORD RETENTION

30. During the period of probation, EPA and/or any EPA
authorized-representative(s), including contractors, are
authorized, allowed, and permitted pursuant Section 114 of the
Act, 42 U.S.C. § 7414, to enter and freely move about all of the
property at the Facility at all reasonable times for the purpose

8

of enforcing the requirements of the Act, including:

　　a.　interviewing site personnel and contractors,
　　inspecting records, operating logs, and contracts
　　related to the Facility;

　　b.　reviewing the progress of the Defendant in
　　carrying out the terms of this Compliance Agreement;

　　c.　conducting such tests as EPA deems necessary;

　　d.　using a camera, video camcorder, sound recorder,
　　or other documentary type equipment; and

　　e.　verifying the reports and data submitted to EPA by
　　the Defendant.

　　31.　The Defendant shall permit EPA to inspect and copy all
documents and other writings, including all sampling and
monitoring data, in any way pertaining to the work undertaken
pursuant to this Compliance Agreement.

　　32.　Nothing in this Compliance Agreement shall limit the
authority of the Plaintiff to conduct tests and inspections
under Section 114 of the Act, 42 U.S.C. § 7414, and any other
applicable federal or state law.

　　33.　All data, information, and records created or
maintained in connection with the implementation of work under
this Compliance Agreement, including the Defendant's
contractors, shall be made available to EPA upon request.
Defendant shall retain all such data, information, or records
for five (5) years after termination of the Compliance
Agreement, and provide notification to EPA and TCEQ sixty (60)
days prior to the destruction of any such documents.   All
employees of the Defendant and all persons, including
contractors who engage in activity under this Compliance
Agreement, shall be available to and shall cooperate with the
Plaintiff.

　　34.　Until five years after the termination of this
Compliance Agreement, the Defendant shall retain, and shall
instruct its contractors and agents to preserve, all non-
identical copies of all records and documents (including records
or documents in electronic form) in its or its contractors' or
agents' possession or control, or that come into its or its
contractors' or agents' possession or control, and that relate

9

in any manner to the Defendant's performance of its obligations under this Compliance Agreement. This record retention requirement shall apply regardless of any corporate or institutional document-retention policy to the contrary. At any time during this record-retention period, the United States or EPA may request copies of any documents or records required to be maintained under this Paragraph.

35.   The Defendant shall retain all such data, information, or records for five (5) years after termination of the Compliance Agreement, and provide notification to the United States, EPA, and TCEQ sixty (60) days prior to the destruction of any such documents. Upon request of the United States, EPA, or TCEQ, the Defendant shall deliver such data, information, or records to the United States, EPA, or TCEQ.

## VIII. EFFECT OF COMPLIANCE AGREEMENT/RESERVATION OF RIGHTS

36.   The Plea Agreement and this Compliance Agreement is not a release or a settlement of any civil liability that the Defendant may have regarding any potential violations of the Act at the Facility. The Defendant acknowledges that it has not received any promises, express or implied, that the United States or EPA will not take any action regarding any civil violations of the Act at the Facility.

37.   The Plea Agreement and this Compliance Agreement shall not be construed to prevent or limit the rights of the United States, EPA, the State of Texas, or TCEQ to obtain penalties or injunctive relief under the Act, or under other Federal or state laws, regulations, or permit conditions, except as expressly specified herein.

38.   The Defendant is responsible for achieving and maintaining complete compliance with all applicable Federal, State, and local laws, regulations, and permits, and the Defendant's compliance with this Compliance Agreement shall not be a defense to any action commenced pursuant to said laws, regulations, or permits. This Compliance Agreement is not a permit, or a modification of any permit under any Federal, State, or local laws or regulations. The United States or EPA do not, by its entering into this Compliance Agreement, warrant or aver in any manner that Defendant's compliance with any aspect of this Compliance Agreement will result in compliance with provisions of the Act, 42 U.S.C. § 7401 *et seq.*

10

39.   This Compliance Agreement does not limit or affect the rights of the Defendant or of the United States or EPA against any third parties not party to this Compliance Agreement, nor does it limit the rights of third parties not party to this Compliance Agreement, against the Defendant, except as otherwise provided by law.

40.   This Compliance Agreement shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Compliance Agreement.

41.   The United States and EPA reserve all legal and equitable remedies available to enforce the provisions of this Compliance Agreement, including all legal and equitable remedies to address any imminent and substantial endangerment to the public health, welfare, or the environment arising at, or posed by, the Defendant's Facility.

## IX.   NOTICES

42.   Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Compliance Agreement, they shall be in writing and addressed as follows:

To EPA:

Chief, Air, Pesticides and Toxics
  Enforcement Branch
Office of Regional Counsel (6RC-EA)
U.S. EPA - Region 6
1445 Ross Avenue
Dallas, Texas 75202-2733
Attention:   Evan Pearson

Chief, Air/Toxics and Inspection
  Coordination Branch
Compliance Assurance and Enforcement Division
U.S. EPA - Region 6
1445 Ross Avenue
Dallas, Texas 75202-2733
Attention:   Elizabeth Cannon

To Defendant:

Jeffrey J. Weatherly, CHMM
Group Environmental Compliance Director

11

McWane, Inc.
P.O. Box 2027
Tyler, Texas 75710

Assistant General Manager, North Plant
McWane, Inc.
P.O. Box 2027
Tyler, Texas 75710
Attention: Kent Brown

Assistant General Manager, South Plant
McWane, Inc.
P.O. Box 2027
Tyler, Texas 75710
Attention: Anthony Orlowski

Rodman C. Johnson, Attorney at Law
Brown McCarroll, LLP
111 Congress Ave., Suite 1400
Austin, Texas 78701-4043

James M. Proctor, II
General Counsel
McWane, Inc.
2900 Highway 280, Suite 300
Birmingham, AL 35223-2469

43.   Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

44.   Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Compliance Agreement, or by mutual agreement of the Parties in writing.

## X.   MODIFICATION

45.   There shall be no modification of this Compliance Agreement without written agreement of the United States, and the Defendant.   Where the modification constitutes a material change to any term of this Compliance Agreement, it shall be effective only upon approval by the Court.

## XI.   STATEMENT OF SEVERABILITY

46.    If any provision or authority of this Compliance Agreement, or the application of this Compliance Agreement to any party or circumstance, is held by any judicial or administrative authority to be invalid, the application of such provisions to other circumstances and remainder of the Compliance Agreement shall not be effected thereby.

## XII. NONCONTESTABILITY

47.    The Defendant agrees not to contest the validity of this Compliance Agreement in any subsequent proceeding to implement or enforce its terms.

## XIII. TERMINATION

48.    This Compliance Agreement shall terminate when the term of probation imposed upon the Defendant by the Court in accepting the Plea Agreement expires.

## XIV. EFFECTIVE DATE

49.    The Effective Date of this Compliance Agreement shall be the date upon which this Plea Agreement is entered by the Court.